Denver District Court
1437 Bannock, Room 256
Denver CO 80202

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

DATE FILED
September 6, 2024
CASE NUMBER: 2024CV681

Civil Action No. __24CV681 /414__

(To be supplied by the court)

FILED IN DENVER
DISTRICT COURT

SEP 06 2024

DENVER, COLORADO
MAIL CLERK ﾉﾊ

**CARLTON STORR**

_____,

Plaintiff

v.

Jury Trial requested:

__✓__ Yes ___ No

**LIBERTY OILFIELD SERVICES LLC**

_____

**CHASE LARSON**

_____

Defendant(s).

(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)

**COMPLAINT**

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last

four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

### A. PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

**CARLTON STORR.**
**28475 GREENFIELD RD 113 SOUTHFIELD, MI 48076.**

### B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

**Defendant 1:**
**LIBERTY OILFIELD SERVICES LLC.**
**950 17TH STREET SUITE 2400 DENVER, COLORADO 80202,**

**Defendant 2:**
**CHASE LARSON.**
**249 MERRIMACK PL, CASTLE PINES CO 80108**

### C. JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

✓ ___ Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

2

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

____ Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____**MICHIGAN**_____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____**NIL**.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of **COLORADO , UNITED STATES OF AMERICA** (name of state or foreign nation).

Defendant 1 has its principal place of business in **COLORADO** (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

**D.   STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that*

*claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:

## COMPLAINT FOR DISCRIMINATION, RETALIATION, WRONGFUL TERMINATION, AND HOSTILE WORK ENVIRONMENT:

### STATEMENT OF FACTS:

1. **Plaintiff's Information:** Carlton Storr, hereinafter referred as Plaintiff is a citizen of the State of Michigan.

2. **Defendant Information:** Liberty Energy D/B/A Liberty Oilfield Services, LLC, with principal office at 950 17th Street, Suite 2400, Denver, CO 80202.

3. **Additional Defendant:** Chase Larson is resident of 249 Merrimack Pl, Castle Pines CO 80108.

4. **Incident Date:** The incident leading to the complaint occurred during a work trip when Plaintiff was driving a crew van to a job site. Incident date was August 14 2022 for wrongful termination of the Plaintiff based on discrimination.

5. **Interaction with Supervisor:** Ground lead/supervisor Brandon Crotteau questioned Plaintiff's driving after Plaintiff downshifted the truck at a red light. Age and race discrimination occurred as the Defendants treated Plaintiff like an old janitor.

6. **Response to Supervisor:** Plaintiff felt personally attacked by the question and handed the keys to Brandon, suggesting he drive instead.

7. **Witnesses:** There were no direct witnesses to the initial exchange, as the co-workers were inside a gas station. Chase Larson told Plaintiff that he saw a video tape of the incident which caused him concern so he arranged a meeting with the Plaintiff, himself and Johnny Ramos back at the Henderson Colorado office.

8. **Retaliation Concerns:** Plaintiff feared that the interaction could escalate, which Plaintiff sought to avoid by handing over the keys.

9. **Discriminatory Remarks:** Plaintiff believed that Brandon's questioning was racially motivated, considering previous incidents where other drivers were not questioned for erratic behavior behind the wheel, but questioned Plaintiff about the use of a button. Not speeding, adverse, unsafe or erratic driving. This whole ordeal was behind the use of a button on the steering wheel.

10. **Comparison of Incidents:** Plaintiff noted that when a white co-worker hit a cattle guard two days earlier, no one questioned his driving. When Gregory Ryan was left the location in the van on a previous location, again nothing was said about his erratic driving, speeding and doing figure 8's and donuts in the crew van. Text message evidence is available for that incident and are attached as **EXHIBIT A**.

11. **Comment from Brandon:** Brandon defended his stance on the button use by saying, "it's a van bro," indicating that he had an issue with the Plaintiff's use of a button not with the van or driving style. The van did the exact same functions and operation automatically when Brandon drove it to the jobsite and no one said a word.

12. **Previous Incidents:** Plaintiff mentioned other instances of unequal treatment based on age and race within the crew. Age and race discrimination against Plaintiff as Plaintiff saw others being trained online for equipment positions, had access to mentors who evaluated the trainees by documentation prepping them for promotion; seeing handpicked individuals with equal or lesser experience offered overtime when Plaintiff was denied or asked to work outside of the district or with a different Liberty Auxiliary like driving sand or working in with an entirely different fleet every time Plaintiff requested to work extra hours and was just plain old ignored when requested. Text messages of this communication are attached as **EXHIBIT A**.

13. **Job Site Arrival:** Despite the incident, Plaintiff proceeded to work as usual at the job site just as Brandon and the other passengers did like a normal day. Brandon mentions nothing of the incident or alleged threat to two onsite supervisors Eric Tommonne, Shawn Weed, The Oil Company Representative, H&R dept, Coordinator on duty, or Safety Manager Mike Shank who are all held by the Liberty Standard of zero tolerance for workplace harassment or violence.

14. **Supervisors on Duty:** Supervisors Eric Tommonne and Shawn Weed were present at the job site during the incident.

15. **Field Coordinator's Absence:** Chase Larson, the Field Coordinator, was on vacation at the time but had a substitute covering his responsibilities. The urgency to communicate was not present until this Chase returned from vacation. Chase was not present on site even after returning but was the only individual Brandon chose to discuss the van incident with days after the fact only after Chase returned from vacation from Mexico.

16. **Meeting Request:** Two days after the incident, Tommonne and Weed asked Plaintiff to stay behind at the hotel instead of going to work, stating that they'd just been informed of the incident and a meeting was requested back at the district office set for August 16th.

17. **Meeting with Defendants:** Plaintiff was called to a meeting with Johnny Ramos and Chase Larson at the district office regarding the van incident. Chase Larson disclosed to EEOC that he already had his mind made up to terminate the Plaintiff prior to meeting with him so the meeting was moot from the start.

18. **Termination:** During this meeting, Plaintiff was terminated from Plaintiff's position after a 15 minute or so conversation with Plaintiff and Johnny Ramos.

19. **Text Messages as Evidence:** Plaintiff presented text messages during the meeting, highlighting racial and discriminatory content shared by the crew. The messages are attached as **EXHIBIT B**.

20. **Defendant's Reaction:** Chase Larson dismissed Plaintiff's concerns, accusing Plaintiff of "playing the race card" with a smirk.

21. **Homophobic and Racist Texts:** Plaintiff provided evidence of racist memes to Johnny Ramos August 16, 2022. The texts ncluded angry black man animation, Monkey, Ape and/or Chimpanzee pics as well as homosexual slurs in which one in particular was a picture mimicking the Plaintiffs personal clothing that was worn underneath his FR coveralls in which he was picked at before for wearing even to the extent of being called a gay Jamaican. This communication was commonly, freely and frequently exchanged among crew members in an open group text chat between the entire crew, the two supervisors Eric and Shawn along with the E-Techs, Sand Coordinator and Mechanics.

22. **Dismissal of Evidence:** Johnny Ramos dismissed the text messages as being "too late" to be addressed even after hearing Plaintiff made his grievance(s) known to Eric Tommonne, Shawn Weed and Chase Larson in person and in text months prior to this particular event with Brandon.

23. **No Write-Ups:** Plaintiff had zero disciplinary write-ups or performance issues on record prior to Plaintiff's termination.

24. **Lack of Evaluations:** Plaintiff was not given any performance evaluations throughout Plaintiff 's employment, unlike his Caucasian co-workers. He was not set up to train on any equipment other than sand.

25. **Denied Advancement:** Plaintiff was denied opportunities for training and advancement, and Plaintiff was labeled a "pump walker" by Liberty as disclosed in the Company's position statement filed with the EEOC, rather than an equipment operator with an assigned job title or duty. Exclusively doing clean up, trash collecting, truck washing, errands and janitorial duties. An audio recording from a coworker (field mechanic) admitting that fact as well as discriminatory treatment by this specific crew of employees as well as pictures of Plaintiff doing these types of job tasks is attached as **EXHIBIT C**.

26. **Racial Discrimination:** Plaintiff asserts that the lack of advancement and unequal treatment were motivated by racial discrimination. Plaintiff was hired as an Operator III but other individuals with no oilfield experience at all were given the training, mentoring and promotions. One in particular by the name of Tanner was even allowed to stay over and work overtime when the Plaintiff was denied overtime in the same timeframe, being told no overtime was available. Tanner was treated favorably as a younger Caucasian new hire with no prior experience as he was hired no more than 1 month prior to the Plaintiff

27. **EEOC Filing:** Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) regarding the incident and Plaintiff's termination. The complaint is attached as **EXHIBIT C.**

28. **Job Performance:** Plaintiff maintained a strong work record, despite being hindered by the discriminatory actions of Plaintiff's supervisors and co-workers. Even offered positions with other Crews within Liberty in and outside of the district but denied transfers three times. A fourth time was delayed as a large equipment move to Nevada occurred in which Chase stated "Vulton", wants you in Wyoming" you can go after you return from Nevada if you want. (The 1st week the Liberty Cheyenne Wyoming office opened).

29. **Unequal Treatment:** Plaintiff points to several instances where Caucasian co-workers were treated more favorably under similar circumstances.

30. **Hostile Work Environment:** The repeated discriminatory actions created a hostile work environment for Plaintiff. Plaintiff and other crew members witnessed fights and combative behavior with this group (Continental Blue Crew) throughout his duration of employment at Liberty with most events being swept under the rug and no disciplinary actions or terminations ever taking place concerning the other individuals who violated company policy.

31. **Retaliation for Complaints:** Plaintiff believes his termination was in retaliation for raising concerns about the discriminatory treatment. Plaintiff was verbal about the harassment during the van ride, its blatancy and Plaintiff's frustration with it. As it was brought to the attention of the Eric Tommone and Shawn Weed in the past in which they assured Plaintiff not to transfer to another crew or resign upon Plaintiff disclosing his discomfort with the actions and behavior of several of the crew members treatment, mostly Chris Ramirez after being cornered in the QC (break room) and threatened by Chris in front on Shawn Weed. The Plaintiff requested a meeting with the two supervisors in which he requested to transfer crews after this incident. Both requests to transfer were denied by the supervisors and then by Chase Larson. Ultimately this 2nd incident was kept between Brandon and Chase in which a decision was already made to terminate Plaintiff with no additional investigation. The meeting on Aug 16, 2022 was not to give Plaintiff his first and only opportunity to give Plaintiff's side of the story but to terminate Plaintiff as they allowed Chris Ramirez to stay employed after what he did a few months prior to the Plaintiff. Text messages requesting a meeting after being threatened by Chris and the denial of the transfer are attached as **EXHIBIT D**.

32. **Emotional Distress:** The incidents caused significant emotional distress and anxiety for Plaintiff.

33. **Unjust Termination:** Plaintiff was wrongfully terminated without just cause, violating company policies and federal employment laws.

34. **Failure to Address Discrimination:** Despite being informed of the discriminatory practices, Liberty Oilfield Services, LLC, failed to take any corrective action.

35. **Systemic Discrimination:** The actions of the Defendants reflect a pattern of systemic racial discrimination within the company. The other younger non-black employees had verbal threats in front of the entire crew during shift change and were swapped crews not terminated. Other incidents included Carlton being physically threatened by an employee right in front of Shawn Weed and he remained employed after the incident. And another incident that Defendant brought up during the termination meeting that happened with Carlton where another employee stormed out of a break room cursing and slamming doors. That employee is still currently employed as well. And Carlton has video confession of a co-worker admitting an incident where he was sexually harassed by another co-worker whom he physically assaulted in retaliation for the sexual misconduct resulting in a slap on the wrist but no termination. The evidence is attached as **EXHIBIT E**.

36. **Relief Sought:** Plaintiff seeks relief for wrongful termination, emotional distress, lost wages, and the discriminatory practices Plaintiff endured.

37. **Legal Violations:** Plaintiff's termination and the events leading to it violate federal laws, including Title VII of the Civil Rights Act of 1964.

38. **Company Policy Violations:** Liberty Oilfield Services, LLC, violated its own policies on equal employment and non-discrimination.

39. **Request for Jury Trial:** Plaintiff requests a jury trial to resolve the issues raised in this complaint.

40. **Additional Relief:** Plaintiff seeks additional relief, including reinstatement, back pay, and punitive damages.

41. **Continuing Discrimination:** Plaintiff believes the discriminatory practices are ongoing within the company and affect other minority employees. Carlton has text evidence of a black employee being treated in a similar manner at Liberty in Henderson being limited to promotion, changing districts to Texas where he was allowed to train as a Supervisor.

42. **Targeting and Ridicule:** Plaintiff was consistently treated as a second-class employee by the crew, who targeted Plaintiff for daily ridicule and treated Plaintiff as an "angry old black guy," a perception that did not reflect Plaintiff's true character.

43. **Lack of Respect and Training:** The crew deliberately excluded Plaintiff from essential job functions, such as running equipment and receiving training for advancement, reducing Plaintiff to the role of a "Frac Janitor" instead of fulfilling Plaintiff's duties as an Operator.

44. **Indirect Communication:** The crew frequently refused to communicate directly with Plaintiff, often relaying messages through another employee, Christopher Ramirez, as if Plaintiff needed a handler.

45. **Derogatory Remarks:** Plaintiff was frequently subjected to derogatory remarks, including racial and gay jokes, slurs, and disrespectful commands such as "get over" and "go do this, go do that", "What the F is that you're eating" , "Who out the Gay Jamaican on our crew"and physical butt grabs by a coworker.

46. **Supervisor Involvement:** The hostile and discriminatory behavior towards Plaintiff was not limited to the crew but was also supported and participated in by the supervisors.

47. **Precedent for Future Actions:** Plaintiff's case sets a precedent for holding companies accountable for racial discrimination and wrongful termination.

48. **Request for Investigation:** Plaintiff requests that the EEOC and relevant authorities conduct a thorough investigation into Liberty Oilfield Services, LLC, and the Defendants' actions.

49. **Public Awareness:** Plaintiff seeks to raise public awareness of the discriminatory practices within the oilfield services industry.

## LEGAL ARGUMENTS:

50. **Discriminatory Treatment:** The Defendants engaged in discriminatory treatment of the Plaintiff based on race, evidenced by the differential scrutiny applied to Plaintiff's driving compared to Caucasian co-workers. This treatment violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment based on race. The Defendants have been involved in cases of similar nature before. The relevant previous cases are attached as **EXHIBIT F**.

51. **Hostile Work Environment:** The cumulative actions and statements by supervisors and co-workers, including racially charged comments and selective criticism, created a hostile work environment for the Plaintiff. This violates the Plaintiff's right to a workplace free from harassment under federal law.

52. **Retaliatory Termination:** The Plaintiff's termination was a direct retaliation for raising concerns about racial discrimination within the workplace. Retaliatory termination is prohibited under Title VII, which protects employees who engage in protected activities, such as complaining about discrimination.

53. **Lack of Performance Evaluations:** The Defendants' failure to provide performance evaluations, a benefit afforded to Caucasian employees, constitutes disparate treatment. This unequal application of company policies based on race is a clear violation of the Civil Rights Act.

54. **Denial of Advancement Opportunities:** The Plaintiff was systematically denied training and advancement opportunities, which were readily available to similarly situated Caucasian employees. This exclusion was motivated by racial discrimination, violating both federal and state anti-discrimination laws.

55. **Pretextual Termination:** The Defendants' stated reason for the Plaintiff's termination is a pretext to mask the true discriminatory and retaliatory motives. The lack of any prior disciplinary actions against the Plaintiff further undermines the credibility of the Defendants' justification.

56. **Violation of Equal Employment Opportunity Policies:** Liberty Oilfield Services, LLC, violated its own equal employment opportunity policies by failing to address and rectify the discriminatory practices and hostile work environment experienced by the Plaintiff.

57. **Negligent Supervision:** The Defendants failed to properly supervise and manage the conduct of their employees, allowing a culture of discrimination and harassment to flourish. This negligent supervision directly contributed to the Plaintiff's unjust termination.

58. **Failure to Investigate Complaints:** The Defendants failed to conduct a timely and thorough investigation into the Plaintiff's complaints of racial discrimination, thus compounding the hostile work environment and contributing to the Plaintiff's unlawful termination.

59. **Racially Disparate Discipline:** The Plaintiff was subjected to racially disparate discipline, as evidenced by the severe scrutiny of Plaintiff's driving and the subsequent termination, while more egregious conduct by Caucasian coworkers went unpunished.

60. **Constructive Discharge:** Even if the termination is not deemed retaliatory, the hostile work environment and discriminatory practices were so intolerable that a reasonable person in the Plaintiff's position would feel compelled to resign, amounting to constructive discharge.

61. **Emotional Distress:** The Defendants' actions caused the Plaintiff significant emotional distress, anxiety, and mental anguish. The law recognizes the right to recover damages for emotional distress resulting from discriminatory practices and wrongful termination.

## LEGAL PRECEDENTS:

62. **Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993):**

The Supreme Court clarified that a hostile work environment claim under Title VII does not require a showing of psychological harm but must be severe or pervasive enough to create an abusive working environment.

This case supports Plaintiff's hostile work environment claim by arguing that the cumulative racial comments and discriminatory practices created an abusive work environment, regardless of whether Plaintiff suffered psychological harm.

63. **Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53 (2006):**

The Court held that the anti-retaliation provision of Title VII covers any employer action that would dissuade a reasonable worker from making or supporting a charge of discrimination, not just those affecting the terms and conditions of employment.

Plaintiff's retaliatory termination claim is supported by this case, as it broadens the scope of what constitutes retaliation, making it easier to argue that Plaintiff's termination was in retaliation for Plaintiff's complaints of discrimination.

### 64. Faragher v. City of Boca Raton, 524 U.S. 775 (1998):

Employers can be held vicariously liable for the actions of their supervisors that create a hostile work environment unless the employer can prove that it exercised reasonable care to prevent and promptly correct any harassing behavior and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided.

This case strengthens Plaintiff's argument for vicarious liability, showing that Liberty Oilfield Services, LLC, could be held liable for the discriminatory actions of Plaintiff's supervisors, especially as they failed to prevent or address the harassment.

### 65. Staub v. Proctor Hospital, 562 U.S. 411 (2011):

The "cat's paw" theory was endorsed, where an employer can be held liable if a supervisor's discriminatory animus influenced an adverse employment action, even if the decision-maker had no discriminatory intent.

This is relevant to Plaintiff's case as Plaintiff can show that Plaintiff's termination was influenced by discriminatory actions or statements made by Plaintiff's supervisors, even if the final decision-makers were not directly involved in the discriminatory conduct.

### 66. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998):

The Court held that same-sex harassment is actionable under Title VII if it is because of the victim's sex. The decision emphasized that Title VII's protections extend to all forms of workplace harassment.

This case supports Plaintiff's argument that racial harassment, like the use of racial slurs and discriminatory practices, falls squarely within the prohibitions of Title VII.

### 67. Desert Palace, Inc. V. Costa, 539 U.S. 90 (2003):

The Court ruled that a Plaintiff does not need to provide direct evidence of discrimination to obtain a mixed-motive instruction under Title VII. Circumstantial evidence is sufficient.

### 68. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989):

This case established the mixed-motive theory of discrimination, where the Plaintiff can prevail by showing that discrimination was one of the motivating factors for the adverse employment action, even if other legitimate reasons were also present.

Plaintiff argues that even if the Defendants claim other reasons for your termination, race was a motivating factor, which under this precedent, would still constitute a violation of Title VII.

## VIOLATION OF FEDERAL LAWS:

### 69. Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.):

Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin.

Employers cannot discriminate in hiring, firing, promotion, pay, job training, or any other term, condition, or privilege of employment based on these protected characteristics.

The Plaintiff was subject to discriminatory treatment, including being unfairly scrutinized, denied performance evaluations, and terminated based on race. The differential treatment compared to Caucasian co-workers, and the termination after raising complaints, constitute violations of Title VII.

### 70. Civil Rights Act of 1866 (42 U.S.C. § 1981):

Section 1981 guarantees all individuals within the United States the same rights to make and enforce contracts as enjoyed by white citizens, including the right to the benefits, privileges, terms, and conditions of the contractual relationship.

This provision prohibits racial discrimination in employment contracts, including hiring, firing, and the terms and conditions of employment.

The Plaintiff's termination and unequal treatment concerning advancement opportunities and evaluations violate Section 1981, as these actions were racially motivated and interfered with his right to a non-discriminatory contractual employment relationship.

### 71. Retaliation under Title VII (42 U.S.C. § 2000e-3(a)):

It is unlawful for an employer to retaliate against an employee for opposing discriminatory practices or participating in any manner in an investigation, proceeding, or hearing under Title VII.

Employees are protected from retaliation when they complain about discrimination or participate in investigations or litigation related to discrimination.

The Plaintiff was terminated shortly after raising concerns about racial discrimination, which suggests retaliatory motive. The dismissive response from the Defendants and the timing of the termination point to a violation of the anti-retaliation provisions of Title VII.

### 72. Civil Rights Act of 1991 (42 U.S.C. § 1981a):

This Act allows for the recovery of compensatory and punitive damages in cases of intentional employment discrimination.

In addition to the remedies available under Title VII, Plaintiffs can recover damages for emotional distress and punitive damages for intentional discrimination.

The Defendants' intentional discriminatory conduct and the resulting emotional distress suffered by the Plaintiff leads to the recovery of compensatory and punitive damages under this provision.

## VIOLATION OF COLORADO STATE LAWS:

### 73. Colorado Anti-Discrimination Act (CADA) (C.R.S. § 24-34-401 et seq.):

CADA prohibits employment discrimination based on race, color, national origin, ancestry, sex, sexual orientation, age, disability, and religion.

Employers in Colorado cannot discriminate in hiring, firing, compensation, terms, conditions, or privileges of employment, nor can they retaliate against employees for opposing discriminatory practices.

The Plaintiff experienced discrimination based on race, including unequal treatment and termination after complaining about such discrimination. These actions violate CADA's provisions against race-based employment discrimination and retaliation.

### 74. Colorado Civil Rights Commission (C.R.S. § 24-34-301 et seq.):

This statute establishes the Colorado Civil Rights Commission, which is tasked with enforcing CADA and ensuring that individuals are not subjected to discrimination in employment, housing, and public accommodations.

The Commission has the authority to investigate complaints, hold hearings, and issue remedies for discriminatory practices.

The Plaintiff's experience of race-based discrimination and retaliation may warrant an investigation and enforcement action by the Colorado Civil Rights Commission under this statute.

### 75. Colorado Wage Claim Act (C.R.S. § 8-4-101 et seq.):

This Act ensures that employees receive timely payment of earned wages, including compensation upon termination.

Employers must pay all earned wages to an employee upon termination, and any attempts to withhold pay as a form of discrimination or retaliation are prohibited.

The Plaintiff was denied wages or compensation owed to him upon termination, this would constitute a violation of the Colorado Wage Claim Act.

### E.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

### PRAYER FOR RELIEF:

Wherefore, Carlton Storr, the Plaintiff respectfully requests that this Court:

76. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice that permits or condones racial and/or national origin harassment and a hostile work environment.

77. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, irrespective of race and national origin and which eradicate the effects of its past and present unlawful employment practices.

78. Order Defendant to make whole Carlton Storr, the Plaintiff by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including front pay or rightful place reinstatement.

79. Order Defendant to make whole Carlton Storr, the Plaintiff by providing compensation for past and future non pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, humiliation, emotional pain and suffering, stress, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

80. Order Defendant to make whole Carlton Storr, the Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of, including, but not limited to, job search expenses, in amounts to be determined at trial.

81. Order Defendant to pay Carlton Storr, the Plaintiff any and all punitive damages for engaging in discriminatory practices with malice or reckless indifference to their federally protected rights in amounts to be determined at trial.

82. Award Carlton Storr, the Plaintiff the Court cost.

83. Grant such further relief as the Court deems necessary and proper in the public interest.

### F.  PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*[signature]*

4TH DAY OF SEPTEMBER 2024.