IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02977-SKC-MEH

CARLTON STORR,

    Plaintiff,

v.

LIBERTY OILFIELD SERVICES LLC and
CHASE LARSON,

    Defendants.

---

**DEFENDANTS' MOTION TO DISMISS, OR IN THE
ALTERNATIVE, STAY AND COMPEL ARBITRATION**

---

Defendants Liberty Oilfield Services LLC ("Liberty") and Chase Larson ("Larson") (jointly, "Defendants") move to dismiss the Complaint filed by Plaintiff Carlton Storr ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process, or in the alternative, dismiss or stay the Complaint pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, and Federal Rules 12(b)(1) and 12(b)(3).

### I. INTRODUCTION

On September 7, 2021, Liberty and Plaintiff, a former employee of Liberty, entered into a valid and enforceable Mutual Arbitration Agreement ("Arbitration Agreement"), which mutually binds both Liberty and Plaintiff with respect to arbitration and provides that neither party may bring a covered claim in court. The Arbitration Agreement explicitly requires that disputes arising out of Plaintiff's employment, including claims against Liberty employees, be submitted to binding arbitration.

Despite agreeing to arbitrate any employment dispute with Liberty and/or its employees, Plaintiff filed a Complaint against Liberty and Larson (a Liberty employee) in the District Court of Denver County asserting claims arising out of his employment with Liberty (the "State Court Action"). Thereafter, Plaintiff served Defendants with Summonses in the State Court Action, but failed to serve Defendants with his Complaint as required by the Colorado Rules of Civil Procedure.

This Court should dismiss this action for failure to properly serve Defendants in accordance with the applicable rules. In the alternative, Plaintiff cannot litigate his claims before this Court because they are clearly covered by the Arbitration Agreement. Accordingly, without waiving their right to later challenge the sufficiency of Plaintiff's Complaint and the merits of his claims, Defendants respectfully request an Order compelling arbitration and dismissing this case, or, in the alternative, staying the case pursuant to the FAA.

## II.   RELEVANT FACTUAL BACKGROUND

Liberty hired Plaintiff on September 7, 2021. (Declaration of Erin Greene ("Greene Decl.", attached hereto as Exhibit A, ¶ 5). At the time of Plaintiff's hire, Liberty required that, as a condition of employment, all new hires must agree to arbitrate any claims arising out of their employment. (*Id.* ¶ 6). Pursuant to this requirement, on September 7, 2021, Plaintiff signed the Arbitration Agreement. (Greene Decl. ¶¶ 7-8, Ex. 1, p. 2). The Arbitration Agreement provides in relevant part:

> [B]y signing this Agreement…both the Company and you agree to resolve any and all claims, disputes, or controversies arising out of or relating to your application

2

> for employment, your employment with the Company, and/or the termination of your employment exclusively before a single, neutral arbitrator.

(Greene Decl. Ex. 1, p. 1). The Arbitration Agreement further provides that among the claims covered by the agreement are "unpaid wages," "discrimination or harassment on the basis of…race," "unlawful retaliation," and "wrongful discharge." (*Id.*) In addition, the Arbitration Agreement makes clear that claims against the Company's "managers, supervisors, [and] employees (current and former)" are likewise subject to the agreement. (*Id.* p. 2).[1] Lastly, by signing the Arbitration Agreement, Plaintiff agreed not only to arbitrate any and all employment-related claims arising out of his employment but that he would "not file a lawsuit in court with regard to any claims, disputes, or controversies covered by this Agreement." (*Id.*)

Despite his promises in the Arbitration Agreement, Plaintiff filed the State Court Action against Defendants on September 6, 2024, alleging claims for unpaid wages, discrimination and harassment on the basis of his race, retaliation, and wrongful termination, all arising out of his employment. (ECF No. 4). Plaintiff served Liberty with a Summons in the State Court Action on October 3, 2024 and Larson with a Summons in the State Court Action on October 7, 2024. (ECF Nos. 5-6). However, Plaintiff failed to serve the Complaint in the State Court Action on either Defendant as required by the Colorado Rules of Civil Procedure. (*Id.*) Despite Plaintiff's improper service, on October 24, 2024, Defendants timely removed the action to this Court and reserved their rights to object to Plaintiff's improper service of process and assert all other defenses available to them. (ECF No. 1).

---

[1] Larson has been employed by Liberty since December 2, 2013. (Greene Decl. ¶ 9).

## III.   ARGUMENT

Plaintiff's claims should be dismissed for insufficient service of process. In the alternative, Plaintiff's claims cannot proceed in this Court because they are subject to final and binding arbitration. The Arbitration Agreement is enforceable because: (1) the FAA strongly favors arbitration, (2) the Arbitration Agreement constitutes a valid and enforceable contract, and (3) it covers the claims brought by Plaintiff. Therefore, the Court should dismiss Plaintiff's Complaint with prejudice and compel him to submit his claims to arbitration.

**A. Plaintiff's Complaint Should Be Dismissed For Insufficient Service of Process.**

Rule 4(c)(1) of the Colorado Rules of Civil Procedure clearly provides that in order to effectuate service of process, a summons must be served with a copy of the complaint. C.R.C.P. 4(c)(1); *Goodman Assoc., LLC v. WP Mountain Properties, LLC*, 222 P.3d 310, 318 (Colo. 2010). The plaintiff is responsible for having the summons and complaint served and must furnish the necessary copies to the person who makes service. C.R.C.P. 4(c)(1).

A motion brought under Rule 12(b)(5) for insufficiency of service of process challenges the mode or lack of delivery of a summons and complaint. *See* Fed. R. Civ. P. 12(b)(5); *Gallan v. Bloom Business Jets, LLC*, 480 F. Supp. 3d 1173, 1178 (D. Colo. 2020). The Court may dismiss a complaint for insufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(5); *Jordan v. Simones*, No. 13-CV-01675-REB-MJW, 2014 WL 1133291, at *2 (D. Colo. Mar. 21, 2014); *Gagliardi v. City Manager*, No. 09-cv-00426-WYD-BNB, 2009 WL 3076160, at *2 (D. Colo. Sept. 21, 2009).

Here, there is no dispute that Plaintiff's service of process upon Defendants was defective, as Plaintiff failed to serve Defendants with the Complaint. Therefore, the Court should dismiss

4

this action for insufficient service of process under Federal Rule 12(b)(5).

    **B. In the Alternative, the Court Should Dismiss or Stay the Complaint and Compel Arbitration.**

        i. <u>The Federal Arbitration Act Mandates Enforcement of the Arbitration Agreement.</u>

The Court should compel arbitration because Plaintiff entered into a binding arbitration agreement with Liberty and federal public policy strongly favors the resolution of disputes through arbitration. In 1925, Congress enacted the FAA, which unequivocally provides that "[a] written provision . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By enacting the FAA, Congress not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy favoring arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). This policy is so significant that "even claims arising under a statute designed to further important policies may be arbitrated." *Green Tree Fin. Corp.*, 531 U.S. at 90. To that end, the FAA establishes a strong federal policy, even a presumption, in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Contr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Section 4 of the FAA establishes a mechanism for a party to compel arbitration pursuant to a valid arbitration agreement, providing that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When interpreting an arbitration agreement, the Court

5

should interpret the parties' intent, construing the terms broadly and resolving all ambiguities in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995). Indeed, the Court "must treat the agreement to arbitrate as valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In the employment context, the U.S. Supreme Court has explained that the FAA applies with full force:

> "We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. [A]rbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts."

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).

As shown below, Plaintiff's claims are subject to an enforceable and mandatory arbitration agreement. Given this, the FAA mandates that Plaintiff arbitrate his claims and the Court dismiss Plaintiff's claims.

      ii.    <u>Plaintiff Entered into An Enforceable Arbitration Agreement With Liberty.</u>

An arbitration agreement is enforceable under the FAA if it is (1) part of a contract or transaction involving interstate commerce; and (2) valid under general principles of contract law. 9 U.S.C. §§ 1-2; *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997) ("[t]here is a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable upon such grounds as exist at law or in equity for the revocation of any contract.") (internal citations omitted). As explained below, the Agreement here satisfies both of these elements and is enforceable under the FAA.

6

1. *The Agreement is covered by the FAA.*

Arbitration agreements, including agreements to arbitrate employment disputes, are enforceable under the FAA if they involve interstate commerce. *See Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1145 n.6 (10th Cir. 2007) ("the Supreme Court has determined that the FAA applies to agreements to arbitrate employment disputes"). Under the FAA, whether a relationship involves interstate commerce is broadly construed. "[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995)). Accordingly, the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress's goal of encouraging alternative dispute resolution mechanisms. *See Allied-Bruce Terminix*, 513 U.S. at 274. A matter "involves" commerce under the FAA if it simply "affects" commerce—a standard commonly applied by courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.* at 274-76.

Here, the Arbitration Agreement and Plaintiff's employment relationship with Liberty indisputably involved interstate commerce. Liberty operates across the country and therefore engages in interstate commerce with its employees, including Plaintiff. (Greene Decl. ¶ 3).

2. *The Arbitration Agreement Is a Valid and Enforceable Contract under State Law.*

Ordinary state law principles governing contract formation should be applied when determining whether the parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The Arbitration Agreement states that Texas law shall govern enforceability

7

of the Agreement. (*See* Greene Decl. Ex. 1, p. 2). However, where there is no conflict between the applicable laws of the forum state and the selected state's laws, the Court may apply the laws of the forum state. *Nichols v. Google LLC*, No. 23-cv-01022-RMR-NRN, 2023 WL 9232937, at *6-7 (D. Colo. Sept. 12, 2023) (holding that the court may apply Colorado law in determining motion to compel arbitration where there is no outcome-determinative conflict between Colorado and California law as to contract formation). Here, there is no outcome determinative conflict between Colorado and Texas law as to contract formation; therefore, this Court may apply Colorado law at this stage.

In Colorado, "[a]n enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prods. Int'l, Inc. v. Emo Transp., Inc.*, 962 P.2d 983, 988 (Colo. App. 1997). Further, Colorado law favors the resolution of disputes through arbitration." *J.A. Walker Co. v. Cambria Corp.*, 159 P.3d 126, 128 (Colo. 2007). Here, there can be no dispute that Plaintiff signed the Arbitration Agreement and that it constitutes a valid and enforceable contract under applicable law.

   iii. <u>Plaintiff's Claims Are Arbitrable.</u>

Plaintiff's claims against Defendants fall squarely within the scope of the Arbitration Agreement. Plaintiff and Liberty mutually agreed to use binding arbitration to resolve any claims, disputes or controversies arising out of or relating to Plaintiff's application for employment, his employment with Liberty, and/or termination of his employment. (Greene Decl. Ex. 1). This includes, but is not limited to, claims for "unpaid wages, overtime, or other compensation; discrimination or harassment on the basis of age, race, sex, national origin. . . or any other unlawful

8

basis; unlawful retaliation; wrongful discharge . . . and claims arising under any statutes or retaliations applicable to applicants, to employees, or to the employment relationship." (*Id*.)

Plaintiff brings claims for race and age discrimination and harassment, retaliation, and wrongful termination, all of which fall squarely within the claims covered by the Arbitration Agreement. In addition, Defendant Larson was an employee of Liberty during the relevant time period and is still currently employed with Liberty. (Greene Decl. ¶ 8). Accordingly, it is beyond dispute that Plaintiff's causes of action against Defendants are covered by the Arbitration Agreement. *AT&T Techs., Inc. v. Comm. Workers of Am.,* 475 U.S. 643, 650 (1986) ("'[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage'") (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). Indeed, Colorado courts have held consistently that a court "must compel arbitration unless [it] can say 'with positive assurance' that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute." *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).

   iv. <u>The Court Should Dismiss Plaintiff's Complaint, or In the Alternative, Stay the Proceedings until the Matter is Resolved in Arbitration.</u>

Because Plaintiff has agreed, in a valid and enforceable contract, to arbitrate all of the claims he asserted in this lawsuit, this Court should compel Plaintiff to arbitrate this dispute and dismiss the action or at least stay the proceedings while the parties arbitrate. Courts have dismissed complaints when all of the issues raised in a complaint must be submitted to arbitration. *See, e.g., Armijo v. Prudential Ins. of Am*., 72 F.3d 793, 797 (10th Cir. 1995) (upholding district court's grant of motion to compel arbitration and dismiss case); *Encore Prods., Inc. v. Promise Keepers*,

9

53 F. Supp. 2d 1101, 1111 (D. Colo. 1999) (dismissing claims pursuant to Rule 12(b)(1) for lack of jurisdiction when claims for relief were subject to arbitration); *Lee v. Grandcor Med. Sys., Inc.*, 702 F. Supp. 252, 253 (D. Colo. 1988) ("Under Colorado law, a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration."). Indeed, in light of Plaintiff's binding agreement not to bring this action in court in the first place, dismissal is especially appropriate. (Greene Decl. Ex. 1, p. 2).

If this Court does not dismiss the action, the Court should stay this action pending the completion of arbitration. The FAA grants the Court authority to stay the proceedings. *See* 9 U.S.C. § 3 ("[T]he court . . . upon being satisfied that the issue . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had.").

## IV.   CONCLUSION

As set forth above, due to Plaintiff's insufficient service of process upon Defendants, the Court should dismiss this lawsuit. In the alternative, given Plaintiff's clear violation of the Arbitration Agreement's express prohibition on the filing of the instant suit, the Court should dismiss this action, or in the alternative stay it, and issue an order compelling Plaintiff to abide by the terms of the Arbitration Agreement.

Respectfully submitted this 31st day of October, 2024.

                OGLETREE, DEAKINS, NASH,
                SMOAK & STEWART, P.C.

                *s/ Rebecca M. Lindell*
                Michael H. Bell
                Rebecca M. Lindell
                2000 South Colorado Boulevard
                Tower Three, Suite 900
                Denver, CO  80222
                Telephone:  303.764.6800
                Facsimile:  303.831.9246
                mike.bell@ogletree.com
                rebecca.lindell@ogletree.com

                *Attorneys for Defendants Liberty Oilfield Services LLC and Chase Larson*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on this 31st day of October, 2024, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY AND COMPEL ARBITRATION** with the Clerk of Court using the CM/ECF system and served a true and accurate copy of the same upon Plaintiff by U.S. Mail:

  Carlton Storr
  28475 Greenfield Road, Unit 113
  Southfield, MI 48076

                                            *s/ Alison L. Shaw*
                                            Alison L. Shaw, Paralegal